UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LANCE NIQUETTE,

        Plaintiff,

v.                                                CASE NO.: 8:04-CV-1752-T-23MAP

THE AVAYA, INC. LONG-TERM DISABILITY
PLAN FOR SALARIED EMPLOYEES,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

This is an action to recover long term benefits governed by the provisions of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001, *et seq.* Plaintiff Lance Niquette, formerly an EIS Consulting Systems Engineer with Avaya, Inc. ("Avaya"), suffers from degenerative hip disease which resulted in his right hip being replaced. Just before the expiration of his term of short-term disability benefits, he applied for long-term disability benefits. Initially, Defendant's claims administrator, Gates, McDonald & Company ("Gates McDonald"), awarded him benefits. But after three months and an independent investigation, it terminated payments concluding Plaintiff was not disabled as defined by the Plan. Plaintiff next exhausted his administrative remedies and then filed this suit for benefits. Defendant has now moved for summary judgment and the issue is whether Gates McDonald arbitrarily and capriciously acted in denying Plaintiff's benefits. After reviewing the record, I find it did not and recommend the district judge grant the Defendant's motion.[1]

_____

[1] The district judge referred the motion to me for a report and recommendation pursuant to his authority under 28 U.S.C. § 636. *See* doc. 28.

*A. Summary Judgment Standard*

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  The existence of some factual disputes between the litigants will not defeat an otherwise properly support summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material.  *Id.*

Furthermore, "in an ERISA benefit denial case ... in a very real sense, the district court sits more as an appellate tribunal than as a trial court.  It does not take evidence, but, rather, evaluates the reasonableness of an administrative determination in light of the record compiled before the plan fiduciary." *Curran v. Kemper Nat'l Servs. Inc.,* 2005 WL 894840 (11th Cir. May 16, 2005) (quoting *Leahy v. Raytheon Co.*, 315 F.3d 11, 17-18 (1st Cir. 2002)).

*B. ERISA Standards of Review*

ERISA does not expressly set forth the appropriate standard of review for actions under 29 U.S.C. § 1132(a)(1)(B) challenging benefit eligibility determinations.  Therefore, a district court must first determine the appropriate standard of review when evaluating a plan administrator's decision to deny benefits.  *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989), *Hunt v. Hawthorne Assocs., Inc.*, 119 F.3d 888, 911 (11th Cir. 1997).  The Eleventh Circuit outlines three standards of review for benefits determinations under ERISA: (1) de novo if the plan does not grant any discretion to the administrator in making the benefits determination; (2) arbitrary and

2

capricious if the plan grants the administrator discretionary authority; and (3) heightened arbitrary and capricious if the administrator has a conflict of interest. *Buckley v. Metro. Life*, 115 F.3d 936, 938 (11th Cir. 1997). Moreover, the Eleventh Circuit applies de novo review unless the plan expressly grants to the administrator discretionary authority to make eligibility determinations or to construe the plan's terms. *Kirwan v. Marriott Corp.*, 10 F.3d 784, 788-789 (11th Cir. 1994). When a plan is silent or ambiguous as to the administrator's discretionary authority, the district court is to apply the de novo standard of review. *Id.* at 789.

Plaintiff does not argue with Defendant's determination that the arbitrary and capricious standard applies here, because Defendant's Plan grants discretionary authority to Gates McDonald to determine eligibility for benefits and to construe the Plan. *HCA Health Servs. of Ga. v. Employers Health Ins. Co.*, 240 F.3d 982, 993 (11th Cir. 2001) ("If the court finds that the [plan] documents grant the claims administrator discretion, then at a minimum, the court applies arbitrary and capricious review and possibly heightened arbitrary and capricious review.") This standard is substantively the same as the "abuse of discretion" standard, and the Eleventh Circuit employs it "to avoid judicial second guessing/intrusion by according the most judicial deference (and thus, the least judicial scrutiny)." *Williams v. BellSouth Telecomms., Inc.*, 373 F.3d 1132 (11th Cir. 2004). Thus, the issues here are whether Gates McDonald reasonably construed the Plan and whether the record reasonably supports its decision. *See Brown v. Blue Cross & Blue Shield of Ala.*, 898 F.2d 1556, 1567 (11th Cir. 1989); *Jett v. Blue Cross & Blue Shield of Ala.*, 890 F.2d 1137 (11th Cir. 1989); *Anderson v. Ciba-Geigy Corp.*, 759 F.2d 1518, 1522 (11th Cir. 1985). And Plaintiff bears the burden to show that Gates McDonald arbitrarily and capriciously terminated benefits. *See generally Grant v. Provident Life and Accident Ins. Co.*, 2001 WL 1671028 (S.D. Fla. 2001) ("ERISA imposes

upon a plan participant seeking to challenge a denial of benefits the burden of showing that she is entitled to such benefits."); *Hall v. Monsanto Co. Hourly Paid Employees' Pension Plan*, 1993 WL 185278, *4 (N.D. Fla. May 13, 1993) (describing a plaintiff's burden as a difficult standard to overcome).

Even when the arbitrary and capricious standard applies, however, a reviewing court must first decide if the claims administrator's interpretation of the plan was "wrong." *HCA Health Services of Ga.,* 240 F.3d at 993. "Wrong," as the Eleventh Circuit uses the term in ERISA cases, means "the conclusion a court reaches when, after reviewing the plan documents and disputed terms *de novo*, the court disagrees with the claims administrator's plan interpretation." *Id.* at n. 23. If the claims administrator's interpretation is "wrong," the court then decides whether "the claimant has proposed a 'reasonable' interpretation of the plan." *Id.* at 994 (quoting *Lee v. Blue Cross/Blue Shield*, 10 F.3d 1547, 1550 (11th Cir. 1994)). But even if the claimant's interpretation is reasonable, that does not mean he automatically prevails. The reason for this seemingly "odd" result - that a reasonable interpretation does not "trump" the claims administrator's wrong interpretation - rests with the stringent demands the arbitrary and capricious standard imposes on the reviewing court. That perspective, due under the terms of the plan, requires the court defer to the claims administrator, a point the Eleventh Circuit emphatically emphasizes. *Id.* ("We cannot over emphasize the importance of the discretion afforded a claims administrator) (citing *Firestone, supra,* 489 U.S. at 111). Guided by the principle of trust law that a trustee's interpretation should not be disturbed if it is reasonable, a claims administrator's wrong interpretation is arbitrary and capricious only if it is unreasonable. This means a claims administrator's wrong but reasonable interpretation is entitled to deference. *Id.* And so long as a reasonable basis exists for the decision, a plan

administrator's determination is not arbitrary and capricious.   *Paramore v. Delta Air Lines*, 129 F.3d 1446, 1451 (11th Cir. 1997).   To put in another way, if the administrator's decision is reasonable, a reviewing court must uphold it, "even if there is evidence that would support a contrary decision."   *Jett, supra*, 890 F.2d at 1140.

### *C. Administrative Background*

Plaintiff was employed by Avaya, Inc. as an EIS Consulting Systems Engineer, which is described as a "nationally pooled expert-level, pre-sales technical engineering resource providing solution development, design, consultation and demonstration associated with a complex EIS-based systems sale."   After suffering from bilateral hip pain for fifteen years, he fell in August 2002, which caused the pain in his hips to be intolerable.   A.R. 358.   Subsequent to the fall, his primary care physician, Dr. Segal, diagnosed him with bilateral aseptic necrosis of the hips, and Plaintiff sought short term disability, which was approved from October 7, 2002, through April 14, 2004.   A.R. 358, 390.   On November 7, 2002, Plaintiff's surgeon, Dr. Hayter, performed a right hip replacement. A.R. 389, 390, 417.

Subsequent to the surgery, Dr. Hayter's medical records reveal a steady stream of improvement.   For instance, on December 27, 2002, Dr. Hayter said that Plaintiff was "making progress with balance and strength and range of motion."   And on January 22, 2003, over two months after the surgery, Dr. Hayter opined that Plaintiff was "doing well," and was able to extend and rotate his hip "without pain," but noted that Plaintiff desired to have his left hip replaced after resolving some other medical problems.   A.R. 413 - 414.   On February 17, 2003, Dr. Segal also noted that Plaintiff had improved and was ambulatory.   A.R. 425.   On May 13, 2003, Dr. Hayter stated that Plaintiff was "slow to recover" from the surgery, "but did eventually get well and now

he is doing fine with occasional mild thigh pain." A.R. 447.  In response to a questionnaire sent to Dr. Hayter from Gates McDonald in June 2003, Dr. Hayter noted Plaintiff was capable of performing sedentary work.[2]  A.R. 442.

Therefore, on July 1, 2003, after conducting an independent investigation, Gates McDonald determined that Plaintiff was not entitled to continued long term disability benefits.  On February 3, 2004, Plaintiff appealed the denial of benefits, and on March 12, 2004, Plaintiff's appeal was denied.  A.R. 348

D.     Discussion

Per the Plan, to qualify for long term disability, an employee must remain "disabled" after the expiration of short term disability benefits as that term is defined in the Plan.  *See* doc. 22, exh. B, p. 13.  Disabled means:

> … for the period commencing immediately after receiving 26 weeks of STD [short term disability] Benefits, the Participant is unable to engage in any occupation or employment for any Participating Company for which the Participant is qualified, or may reasonably become qualified, based on training, education or experience, other than a job that pays less than 50 percent of the Participant's Eligible Pay, by reason of illness or accidental injury, other than accidental injury arising out of or in the course of employment by a Participating Company, as determined by the Claims Administrator in its sole discretion.

*See* doc. 22, exh. B, p. 2.

Further, the Plan specifies that Participating Companies are "Avaya and other companies that have elected to participate in the Plan with the prior approval of Avaya."  *Id* at 3.

---

[2]Although Plaintiff makes much of the fact that the questionnaire did not provide Dr. Hayter ample room to thoroughly explain his opinions, nothing prevented Dr. Hayter from expanding on his answer if he deemed it necessary.  Nonetheless, his opinion is unambiguous - Plaintiff is capable of sedentary work.

Applying the narrow standard of review mandated by the Eleventh Circuit when examining the administrative record and the parties' arguments, I conclude Gates McDonald's did not arbitrarily and capriciously decide to terminate Plaintiff's benefits.   On the contrary, Gates McDonald acted reasonably and in good faith after thoroughly considering Plaintiff's submissions. Plaintiff complains that Defendant applied the incorrect definition of disability and points to an apparent contradiction in the definition of disability provided in his denial letter and that provided in the Plan document.   Specifically, in the denial letter, Gates McDonald stated that in order for Plaintiff to receive benefits, he had to "be unable to do any job *for any employer* for which [he] was qualified, or for which [he] may reasonably become qualified ... other than one that pays less that 50% of [his] eligible total pay at the time [he] became disabled," while the Plan stated that Plaintiff had to be "unable to engage in any occupation ... *for any Participating Company* for which Participant is qualified ..."   *See* A.R. 350 and doc. 22, exh. B, p. 2 (emphasis added).   Plaintiff argues that this is important because the letter's definition of disabled is less restrictive than the one provided in the Plan document - a difference which Plaintiff apparently believes might have made a difference in Gates McDonald's decision.   By the letter's definition, the Plaintiff must be unable to perform any occupation to receive benefits, but by the Plan's definition, the Plaintiff must only be unable to perform jobs within Avaya, Inc. or a participating company to receive benefits.   After a thorough review of the administrative record, it appears that Defendant was quoting the summary plan description, rather than the Plan itself. *See*  doc. 22., exh. C, p. 11.  Clearly, the Plan Document "control[s] and govern[s] the operation of the LTD Plan," not the summary plan description. *See* doc. 22, exh. C., p. 2.  However, while Gates McDonald may have quoted a different definition of disabled  in the denial letter, the mistake was harmless.  Even if the Court applies the definition

proposed by Plaintiff, the fact remains that Dr. Hayter opined that Plaintiff is capable of sedentary work.  The job duties, responsibilities, and required skill sets of Plaintiff's position reveal that his job as an EIS Consulting Systems Engineer is a sedentary position.  A.R. 346.  Put another way, no matter what definition of "disabled" is applied, Gates McDonald's decision to deny benefits was not arbitrary and capricious.  Gates McDonald noted that the medical documentation provided by Dr. Hayter did not support the continuation of benefits.  Hence, I find Gates McDonald's decision to terminate Plaintiff's benefits was reasonable, made in good faith, and neither arbitrary or capricious and recommend Defendant's motion for summary judgment be GRANTED.

*D.    Conclusion*

In accordance with the above, it is hereby

RECOMMENDED that:

1.      Defendant's Motion for Summary Judgment (doc. 18) be GRANTED.

REPORTED in chambers at Tampa, Florida on this 11th day of January, 2006.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Failure to file written objections to this Report and Recommendation within 10 days from the date of its service shall bar an aggrieved party from attacking it before the assigned district judge.  28 U.S.C. §636(b); Local Rule 6.02.

Copies to:      Honorable Steven D. Merryday
                Counsel of Record

8